### In re HOOD BAY PACKING CO.

(District Court, W. D. Washington, N. D. January, 1922.)

1. Sales ⊚═451—Contract held to show delivery was intended to be made In Alaska.

A conditional sale contract, stating that vendor had delivered to buyer property at a designated point in Alaska, with evidence that property had not then been delivered, but that vendor thereafter put it on shipboard at Seattle, and that physical possession of it was not taken by buyer until it was delivered by ship in Alaska, where the conditional sale contract was recorded, shows that, between the parties, delivery was to be in Alaska, and that no creditor was misled by failure to file the conditional sale contract in Washington.

2. Bankruptcy ⊚═141—Adjudication vests in trustee title to property, wherever situated.

The adjudication of bankruptcy vests in the trustee the title of the bankrupt, wherever the property is situated.

3. Bankruptcy ⊚═151—Trustee's title is that of an execution creditor.

An adjudication in bankruptcy operates as a judgment in favor of the creditors, and gives the trustee the title of an execution creditor, under Comp. St. § 9631.

4. Bankruptcy ⊚═184(2)—Creditor, petitioning for delivery of certain property In Alaska to him, is not regarded as seeking relief in the courts of Washington.

Where a bankruptcy court sitting in Washington has taken possession of property of the bankrupt located in Alaska, a creditor, who petitions

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for delivery of the property to him under a conditional sale contract, is not to be regarded as seeking to enforce its remedy in the courts of Washington, within the rule that a party so seeking is governed by the law enforced by those courts, since the creditor did not come into that court voluntarily, but because it was the only forum where relief could have been obtained.

5. **Bankruptcy ⇐=184(2)—Conditional sale contract held governed by laws of territory of delivery.**

Where goods sold under conditional contract were delivered in the territory of Alaska, where physical possession of them was first taken by the bankrupt, so that no creditor could have been deceived by apparent possession in the state of Washington, where both seller and bankrupt had their principal place of business, and there was no showing as to where the contract was executed, the right of the seller to the property as against the trustee is to be governed by the laws of Alaska (Laws 1913, c. 66), which do not require the conditional sale contract to be recorded.

In Bankruptcy. In the matter of the Hood Bay Packing Company, bankrupt. On petition to review an order of the referee denying petitioner's claim to property in the hands of the trustee under conditional sale contract. Modified, so as to direct the trustee to pay the petitioner the balance due on the contract from the proceeds of the sale of the property.

Farrell, Kane & Stratton, of Seattle, Wash., for petitioner.

Frank E. Hammond, of Seattle, Wash., for trustee.

NETERER, District Judge. The bankrupt is a Washington corporation, and on the 15th of January, 1919, it entered an order with the Seattle-Astoria Iron Works, a Washington corporation, for a line of machinery and equipment for its fishing plant, which it was constructing at Hood Bay, Alaska, "for the account of the Hood Bay Packing Company," in which order was contained:

"We will give you definite shipping instructions when we have arranged with the shipping company to send ship to our plant."

On the 30th day of April, 1919, a conditional sale contract was executed by the vendor and vendee, which recites that the "vendor has delivered to Hood Bay Packing Company, hereinafter called the vendee, at Hood Bay, Alaska, the said property therein described," and further recites, "possession of all of said property under which conditional bill of sale was taken by the vendee on this 30th day of April, 1919." The testimony shows that the property was "ordered for Hood Bay, Alaska, and to be used in the plant at Hood Bay, Alaska," and the said machinery was loaded on a boat and shipped then direct to this company at Hood Bay, Alaska, where it has remained ever since The shipment was made several days subsequent to April 30. The equipment was not in the actual possession of the vendee prior to shipment. The conditional bill of sale also provided that the vendee shall keep "said property insured in a sufficient sum in favor of the vendor to cover its interests at all times before the vesting of the title of the said property in the vendee, * * * loss, if any, payable to Seattle-Astoria Iron Works, as its interest may appear."

⇐=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The principal place of business of both corporations was Seattle. The conditional sale contract was not filed for record in the office of King county, Wash. Section 3670, R. & B. Code Wash. It was recorded in Alaska. But the Alaska statute (Laws 1913, c. 66) does not require filing or recording to preserve the title in the vendor under a conditional sale. Default was made in payment. No demand for return of the property was made prior to adjudication. Demand was made upon the trustee, and, upon refusal, petition was filed before the referee. Upon the hearing the trustee contended that the property was delivered to the vendee in Washington. The conditional sale contract not being filed within 10 days, the title vested, and the vendor has no right in the property. The referee found in favor of the trustee. The matter is before the court for review.

The conditional sale contract upon its face shows delivery at Hood Bay, Alaska, upon the date of its execution. The place of execution is not disclosed. It is shown that the goods were not shipped until after the execution of the contract, and were manufactured by the vendor at its Seattle plant prior to April 30. One of the machines was not shipped until May 28; none of the property is shown to have been in the actual possession of the vendee. There was no visible, open, change manifested by any outward signs prior to shipment. The machinery was loaded on the boat by the vendor, and the only evidence of possession is that which is disclosed by the order of January 12, 1919, the conditional sale contract, and the shipment. The testimony is silent as to the payment for the transportation.

[1-3] From the record I think the conclusion is inevitable that, as between the parties, delivery was to be at Hood Bay, Alaska. The parties acted in good faith. No creditor was misled by reason of the failure to file and record the conditional sale contract in King county. No question is raised as to the title to the property in controversy, or as to the extent of the interest of the bankrupt. The adjudication vested in the trustee the title of the bankrupt, wherever the property is situated (see Robertson v. Howard, 229 U. S. 254, 33 Sup. Ct. 854, 57 L. Ed. 1174, 30 Am. Bankr. R. 611; Section 9631, Comp. St.), and operated as a judgment in favor of the creditors (York Mfg. Co. v. Cassell, 201 U. S. 344, 352, 26 Sup. Ct. 481, 50 L. Ed. 782, 15 Am. Bankr. R. 633), and the title of the trustee should be regarded as that of an execution creditor. In re Hess (D. C., Pa.) 138 Fed. 954, 14 Am. Bankr. R. 635, 138 Fed. 635. Mr. Justice Bradley, in Harkness v. Russell, 118 U. S. 663, 679, 7 Sup. Ct. 51, 59 (30 L. Ed. 285), quotes Mr. Justice Davis:

"It was decided by this court in Green v. Van Buskirk, 5 Wall. 307, and 7 Wall. 139, that the liability of the property to be sold under legal process, issuing from the courts of the state where it is situated, must be determined by the law there rather than that of the jurisdiction where the owner lives. * * *"

In Pritchard v. Norton, 106 U. S. 124, 136, 1 Sup. Ct. 102, 112 (27 L. Ed. 104), Mr. Justice Matthews, in discussing the relation of lex loci contractus and lex loci solutionis, said:

"It has never been better described than it was incidentally by Mr. Chief Justice Marshall in Wayman v. Southard, 10 Wheat. 1, 48, where he defines

it as a principle of universal law—'the principle that in every forum a contract is governed by the law with a view to which it was made.' The same idea had been expressed by Lord Mansfield in Robinson v. Bland, 2 Burr. 1077, 1078. 'The law of the place,' he said, 'can never be the rule where the transaction is entered into with an express view to the law of another country, as the rule by which it is to be governed.' And in Lloyd v. Guibert, Law Rep. 1 Q. B. 115, 120, in the Court of Exchequer Chamber, it was said that 'it is necessary to consider by what general law the parties intended that the transaction should be governed, or rather by what general law it is just to presume that they have submitted themselves in the matter.' Le Breton v. Miles, 8 Paige (N. Y.) 261."

## Wheaton on Conflict of Laws, § 401, says:

"Obligations, in respect to the mode of their solemnization, are subject to the rule, 'locus regit actum'; in respect to their interpretation, to the 'lex loci contractus'; in respect to the mode of their performance, to the law of the place of their performance. But the lexi fori determines when and how such laws, when foreign, are to be adopted, and in all cases not specified above supplies the applicatory law."

In Scudder v. Union National Bank, 91 U. S. 406, 23 L. Ed. 245, the Supreme Court held that the validity of a contract, the interpretation and execution, are determined by the law of the place where it is made, but the remedy depends upon the law of the place where the suit is brought, and held that the acceptance of a bill executed in Missouri depended upon the law of Illinois where the acceptors lived. Loveland's Bankruptcy, 873.

"Where a conditional sale is made in one state, and contemplated or expressly provides that the property is to be delivered or used in another state, the law of the latter state controls." In re Wall, 207 Fed. 994.

In Beggs et al. v. Bartels, 73 Conn. 132, 135, 46 Atl. 874, 875 (84 Am. St. Rep. 152) the court said:

"The property was delivered upon the cars at New York, to be transported to Connecticut. In pursuance of the terms of the agreement, it was taken by Roberts [the vendee] to Stamford, and a year afterwards was attached there by a Connecticut creditor of Roberts. While the formal execution of the contract was in New York, the principal acts necessary to effect its objects were by the terms of the contract to be performed in Connecticut. As affording to the plaintiffs a security upon the property described, and as transferring to Roberts the apparent ownership of the property by giving to him the possession, the right to use, and even the right to affix it to realty, and as granting him the absolute title upon payment of the purchase price, the contractor was intended to have its operation upon property situated in Connecticut. * * * The transaction was begun in New York, but was to be performed and completed here [Connecticut], and the parties must be held to have contracted with reference to the law of this state, and that law must govern. * * *"

In Cable Co. v. McElhoe, 58 Ind. App. 637, 649, 108 N. E. 790, 795, said the Appellate Court of Indiana:

"In the case at bar the situs of the involved property was in Illinois at the time of the execution of the contract; * * * the contract was executed in Illinois, and the vendor was domiciled there; * * * the contract was * * * executed in contemplation that Attica, Ind., should immediately become the situs of the property. * * * 'Attica, Indiana' * * * was named in the contract as the address of the vendee. * * * The contract recognized that the vendee was already, or at least soon to be, domiciled in

Indiana, and consequently that he should perform the conditions and cove- nants of the contract, * * * including the payment of the purchase money. * * * "

The contract construed the thoughts of the parties as limited or granted by the law of Indiana. The property delivered was a piano.

The trustee strongly urges that this court is not concerned with any rights the vendor might assert under the Alaska laws, since the con- tract was made in Washington, and relief is now sought within this state; that the laws of this state are therefore conclusive. While this court has jurisdiction of the res and the parties (Robertson v. Howard, supra), and may direct its officer, the trustee, to convey this property, which is in another jurisdiction, under its equity powers aside from the Bankruptcy Act, being Comp. St. §§ 9585–9656 (Fall v. Eastin, 215 U. S. 1, 30 Sup. Ct. 3, 54 L. Ed. 65, 23 L. R. A. [N. S.] 924, 17 Ann. Cas. 853), the right of the parties must be determined in the light of the facts, and from all of the facts there is no doubt that the situs of the property, at all times, was to be Alaska. It was shipped to Alaska; it was received in Alaska, the first actual physical possession; the contract of sale was recorded in Alaska, though not required by law; the res has at all times been in Alaska. The transaction was begun in Washington, but was to be performed and completed in Alaska.

[4, 5] The petitioner is not seeking to enforce its remedy in the "courts of Washington," as stated by the trustee. It did not come into this court from choice, but this court, by virtue of vested power, stretched its arm to Alaska, took the property within its jurisdiction, and this is, therefore, the only forum where the issue may be deter- mined. Under these circumstances, the petitioner may not be denied any rights which the Alaska law may afford. The fact that the trus- tee's title is that of an execution creditor also tends to that conclusion.

From what has been stated, it must follow that the rights of the parties should be determined by the Alaska law, and, as so concluded, the finding of the referee should be modified, so as to direct the trustee to pay the petitioner the balance due on the contract upon the sale of the property.